UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

PAMELA K. WOODCOCK,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-147

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 9), Plaintiff's reply (doc. 10), the administrative record (doc. 7),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920[,] respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

### A. Procedural History

Plaintiff filed for DIB and SSI alleging a disability onset date of December 27, 2007. PageID 355-67. Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*, hearing loss, anxiety, and depression. PageID 77.

After initial denial of her applications, Plaintiff received a hearing before ALJ Samuel Rodner on March 3, 2013, and a subsequent hearing before ALJ Vincent Misenti on July 30, 2013. PageID 95-161. ALJ Misenti issued a written decision on August 26, 2013 finding Plaintiff not disabled. PageID 74-85. Specifically, his findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since December 27, 2007, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: hearing loss, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to working in moderately noisy environments. She is capable of understanding, remembering, and carrying out simple, routine, repetitive tasks. The claimant is not able to perform at a production-rate pace but she can perform goal-oriented work. She is limited to using judgment limited to simple work-related decisions. She can socially interact with the public occasionally. The claimant is limited to tolerating few changes in the routine work setting, defined as working in a static environment.

> 6. The claimant is capable of performing [her] past relevant work as a housekeeper/cleaner, DOT 323.687-014, which is light[4] in exertional demands and unskilled (SVP-2). This work does not require the performance of work related activities precluded by the claimant's [RFC] (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 27, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

PageID 76-84. It is the ALJ's findings which are at issue in this appeal.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 43-46. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

**B.     Evidence of Record**

The ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 77-84. Plaintiff, in her Statement of Errors, summarizes the relevant medical evidence. Doc. 8 at PageID 1099-1101. The Commissioner's memorandum in opposition defers to the ALJ's recitation of the evidence. Doc. 9 at PageID 1116. Except as otherwise stated in this Report and Recommendation, the undersigned incorporates the statement of facts set forth by both Plaintiff and the ALJ. Where applicable, the Court will identify the medical evidence relevant to this decision.

---

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or…sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable"

and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred in weighing medical opinion evidence regarding her mental health impairments. Doc. 8 at PageID 1103-13. Specifically, she alleges that the ALJ's decision to discount the opinion of advanced practice nurse Christopher Heather ("Heather") -- and rely, instead, on the opinions of record-reviewing psychologists David Dietz, Ph.D., and Kristen Haskins, Psy.D. (collectively referred to as the

5

"record reviewers") -- is unsupported by substantial evidence. *Id.* For the reasons that follow, the undersigned agrees.

### A. Record Reviewers

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (3) examiners; and (3) record reviewers. *Id.*

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Treaters are entitled to greater deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9.

Record reviewers are afforded the least deference.  These "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).  Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c).  *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

In this case, there were no opinions from treating physicians, psychiatrists, or psychologists.  With regard to medical source opinions concerning Plaintiff's mental impairments, the ALJ instead gave "great weight" to an unidentified record-reviewer's "psychological assessment" because "[t]he treatment records through July 2013 support that the claimant is not more than moderately impaired."  PageID 83.  Initially, the undersigned notes that the record contains separate opinions from two record reviewing medical sources; namely, an opinion from David Dietz, Ph.D. dated September 6, 2011; and an opinion from Kristen Haskins, Psy.D. dated February 15, 2012.  PageID 170-71, 180-81, 192-94, 205-07. Presumably, the ALJ credited Dr. Dietz's opinion, though such presumption is not entirely clear from the ALJ's decision considering he failed to not only identify the medical source given great weight, but also failed to cite the opinion within the record.  PageID 83.

Notwithstanding the ALJ's failure in this regard, the undersigned finds error with the ALJ's analysis -- regardless of which record-reviewer he credited -- for a number of reasons.  First, the ALJ's analysis is perfunctory, conclusory, and provides no meaningful explanation of the weight given.  *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 584 (S.D. Ohio 2015)

7

(holding that "[s]imply restating a non-treating source's opinion and offering a conclusory assessment, without further discussion, fails to satisfy the requirement that the ALJ provide meaningful explanation of the weight given to all the medical opinion evidence"). Although the ALJ found the opinion supported by treatment records, he failed to identify such records and further failed explain why they provide support.

Second, the conclusory statement posited by the ALJ in weighing this opinion is inconsistent with findings set forth elsewhere in his decision. PageID 83. Notably, in weighing the record reviewers' opinions, the ALJ found that treatment notes through July 2013 support a conclusion that Plaintiff "is not more than moderately limited." *Id*. However, contrary to such statement, the ALJ previously gave weight to a statement that Plaintiff "had marked ability to complete work tasks at a consistent pace and perform at production levels[.]" *Id*. "Moderate" functional limitations are "non-disabling," see *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), whereas "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq*. *See Holland v. Comm'r of Soc. Sec.*, No. 3:14-CV-246, 2015 WL 6891032, at *4 (S.D. Ohio July 6, 2015). Such an inconsistent and conclusory assessment deprives this Court of the opportunity to meaningfully review the ALJ's decision. *Cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Third, as set forth *infra*, the undersigned also finds that, based upon a careful review of the ALJ's analysis concerning Heather's opinion, the ALJ's conclusion -- that Plaintiff is no more than moderately limited -- is unsupported by substantial evidence. Based on all of the foregoing, the ALJ erred in failing to meaningfully analyze the opinions of record-reviewers Deitz and Haskins.

8

### B. Treating Nurse Heather

In addition to "medical source opinions," opinions from "other sources" can be used to establish the severity of a claimant's impairment and establish how impairments affect a claimant's ability to work. 20 C.F.R. § 404.1513(d). "Other sources" include medical sources such as nurse practitioners that do not qualify as "acceptable medical sources" under the regulations. *Id*. Although "other medical sources" who have treated a claimant are not entitled to controlling weight like a treating physician or psychologist are, "other sources" may be entitled to *more* weight than "acceptable medical sources" under the unique circumstances of a given case. SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006). In fact, the opinions of "other sources," such as nurse practitioners, may even be given more weight than a *treating* physician if the "other sources" have seen the claimant more frequently than the "acceptable sources" and have provided better explanations for their opinions. *Id*.

ALJs weigh the opinions of "other sources" using the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.*, "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Williamson v. Comm'r of Soc. Sec.*, No. 1:14-cv-731, 2016 WL 255033, at *8 (S.D. Ohio Jan. 20, 2016); *see also* 20 C.F.R. § 404.1527(c). ALJs should "explain the weight given" such opinions, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Williamson*, at *8.

9

Here, beginning in August 2011, Plaintiff received mental health treatment from Heather, an advance practice nurse specializing in adult psychiatry. PageID 761; s*ee also* doc. 9 at PageID 1118. Months later, on April 23, 2012, Heather opined that Plaintiff handled stress "poorly" and could perform "in a simple work setting" on a part-time basis only (and thus was incapable of full-time employment and thus disabled).[5] *Id*. Over a year later, in May 2013, Heather concluded that Plaintiff demonstrated "marked" impairment in her ability to: "perform and complete work tasks in a normal work day or work week at a consistent pace"; maintain concentration and attention for more than a brief period of time; and "perform at production levels expected by most employers." *Id*. As a result, Heather found Plaintiff "unable to work due to her inability to handle stress/pressure[,]" and further concluded that she had poor concentration, poor coping skills, possessed low energy, and was easily frustrated. PageID 1012.

In his decision, the ALJ -- while giving "some weight" to Heather's assessment that Plaintiff was limited in her ability to "complete work tasks at a consistent pace and perform at production levels" -- rejected the conclusion that Plaintiff was only capable of part-time work and that she could only maintain attention and concentration for short periods of time. PageID 82-83. With regard to Heather's opinion concerning part-time work, the ALJ found such opinion was "not supported by [Heather's] findings or the other mental health treatment records in evidence[,]" specifically:

> Mental health improvement due to medication usage was noted in treatment records between August 22, 2011 and May 28, 2012. Treatment records in May 2012 showed that the claimant reported she was too busy

---

[5] Courts hold that an individual who is able to perform only part-time work is disabled under the Commissioner's regulations. *See Couch v. Comm'r of Soc. Sec.*, No. 1:12-CV-00210, 2013 WL 5947174, at *3 (S.D. Ohio Nov. 6, 2013); *Pugh v. Astrue*, No. 3:08-CV-117, 2009 WL 1361922, at *4 (E.D. Tenn. May 14, 2009); *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000); *see also* SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996) (stating that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" *i.e.*, for "8 hours a day, for 5 days a week, or an equivalent work schedule").

> trying to get [to] all her medical appointments (*i.e.* teeth pulled, new glasses, etc) to have time to go to groups. She further reported that she felt she was not ready to try to work and that she still did day care work for "mama Turk." The claimant also reported that she was hoping to win her [S]ocial [S]ecurity case and get more money to buy a newer car. The most current treatment records, dated July 22, 2013, showed that the claimant discussed her desire to begin dating relationships. These activities are not indicative of a person suffering from severe depression and anxiety.
>
> Treatment records . . . between July 2012 and November 2012 also showed that the claimant was very stable, and she did not appear depressed at the January 2013 session when she presented as upbeat, friendly, and very easy to talk to despite rating her depression as "bad[.]"

PageID 82-83. In rejecting Heather's opinion concerning Plaintiff's ability to maintain attention and concentration for only brief periods of time, the ALJ pointed to Plaintiff's ability to drive, as well as her daily activities. *Id*. Plaintiff argues that these reasons are insufficient to undermine Heather's opinion. The undersigned agrees.

First, with regard to Plaintiff's medication usage, a careful review of the record demonstrates that -- as a result of the combination of all of Plaintiff's impairments (*i.e.*, her poor eyesight and mental health impairments) -- Plaintiff had extreme difficulty sorting and monitoring her weekly medications. *See* PageID 1048-97. In fact, Plaintiff required weekly assistance from mental health providers in this regard. *See* PageID 1054; *see also* PageID 1066 (noting Plaintiff's report that her "difficulty with vision is much of the reason why she cannot organize her medication on her own"); PageID 1080 (noting that Plaintiff's "anxiety/impulsiveness which impact[s] her problem sol[ving] ability" contributes to her need for assistance in monitoring her medications). In fact, on at least one occasion, Plaintiff was unable to identify medication in her weekly planner. *See* PageID 1064 (noting that Plaintiff reported having "one big blue pill in her planner and she [was] unsure which medication it is" and that she needed someone to "watch [her] because sometimes [she] put 2 pills in when it

11

should be one"). Further, numerous records document Plaintiff's inability "to demonstrate the importance of filing her weekly med[ication] planner on her own." PageID 1050-54, 1060, 1072-74, 1078-80, 1086. Accordingly, although there are notes that Plaintiff's medications assist with her symptoms, in light of the fact she is unable to manage and sort her medications independently, the records in this regard do not undermine Heather's opinion that Plaintiff could only perform part-time work.

With regard to statements made by Plaintiff regarding "day care work for 'mama Turk,'" the record does not detail what this work involved. The Court's review of Plaintiff's treatment records reveal that she was living "with a local family" where she received "free rent in exchange for taking care of one of their family members." PageID 801-09. Absent further information about the nature of this "work" -- and whether it was performed on a regular and continued basis, *see* SSR 96-8p, 1996 WL 374184, at *1 -- the undersigned concludes that it fails to provide substantial evidence undermining Heather's opinion regarding Plaintiff's ability to perform only part-time work. In fact, the treatment note itself reflects Plaintiff's statement that "she is not ready to try to work." PageID 801.

The undersigned also fails to see how Plaintiff's desire to win her Social Security disability case, purchase a newer car, and begin dating undermines Heather's opinion that she cannot maintain more than part-time employment. Certainly most, if not all, Social Security claimants desire to win their disability cases, particularly those in dire financial situations like Plaintiff -- who was without a home, food, or transportation for periods of time. *Cf. Fajardo v. Astrue*, No. CV 08-01615 AJW, 2010 WL 273168, at *4 (C.D. Cal. Jan. 14, 2010) (stating that "[e]very disability claimant presumably is motivated by the desire to win benefits" and that such reason is insufficient, in and of itself, to hold against a Social Security disability claimant).

Plaintiff's financial difficulties are well documented in the record, as well as her need for a newer car. *See, e.g.*, PageID 799 (noting that Plaintiff did not "want to stay homeless" and needed to work with her case manager "to get into [a] homeless shelter"); PageID 1048 (noting Plaintiff's "loss of her vehicle ([and] repairs [were] unaffordable) and [her] decision . . . to have [her] car go to salvage"); PageID 1-56 (noting that Plaintiff "had to sell her car for scrap" after "it quit running," and that "she is depressed without a vehicle"); PageID 1077 (noting Plaintiff's need for transportation "to/from appointments"); PageID 1096 (noting Plaintiff's report that "she has been out of food since Friday" and ate only "cake icing and stale crackers"). With regard to her desire to date, records note that she tended to socially isolate and, therefore, beginning dating relationships appears to be a treatment goal as opposed to a testament to her ability to interact with others. *See* PageID 1048. Accordingly, none of these reasons provide substantial evidence upon which the ALJ could rely upon in reducing the weight given to Heather's opinion.

With regard to Plaintiff's stable appearance at certain therapy/treatment sessions, such statement fails to consider the nature of mental health impairments, *i.e.*, that the symptoms of such impairments wax and wane from day-to-day. *Cf. Neikirk v. Comm'r of Soc. Sec.*, 3:13-cv-269, 2014 WL 7176625, at *5 (S.D. Ohio Sep. 25, 2014). To that end, the Court notes other record evidence supporting Plaintiff's claim of disabling mental limitations. *See* PageID 1045-46, 1050, 1052, 1062.

Insofar as the ALJ rejected Heather's opinion that Plaintiff had a "marked limitation" in her ability to maintain attention and concentration, the undersigned finds that Plaintiff's ability to drive, as well as her restricted and limited daily activities -- *i.e.*, walking one block to a store on a weekly basis, using public transportation for the purpose of attending her medical appointments, or cleaning her home infrequently, PageID 122-26 -- do not undermine Heather's opinion. This

is not a case where a claimant engages in a wide range of activities. *Cf. Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Further, Plaintiff's limitations in maintaining attention and concentration are supported by her treatment records, noted *supra*, including evidence showing Plaintiff's inability to focus on monitoring her weekly medications. PageID 1050-54, 1060, 1072-74, 1078-80, 1086.

Finally, the ALJ did not discuss the factors favoring Heather's opinion;, namely, the frequency and length of his treatment of Plaintiff and his specialty in adult psychiatry. *See* SSR 06-03p, 2006 WL 2329939 at *4 (Aug. 9, 2006) (explaining that 20 C.F.R. § 404.1527 factors apply to "other source" opinions). While the ALJ need not give a formulaic recitation of the factors discussed in the Social Security regulations, *cf. Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011), the ALJ must "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." SSR 06-03p, at *6.

Accordingly, based on the foregoing, the undersigned finds the ALJ's rejection of Heather's opinion is unsupported by substantial evidence.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the

presentation of cumulative evidence, or where proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, proof of disability is not overwhelming.  Upon remand, the ALJ should appropriately assess all evidence of record (including opinions from other sources); determine Plaintiff's RFC based upon the substantial evidence of record; and, after utilizing a vocational expert or medical advisor if appropriate, determine Plaintiff's disability status anew.

V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.


Date:	July 27, 2016	*s/ Michael J. Newman*
	Michael J. Newman
	United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).